ITIN OIL COMPANY, a Michigan Corporation, Plaintiff,

v.

MOBIL OIL CORPORATION, a New York Corporation, Defendant.

Civ. A. No. 81–74218.

United States District Court,
E. D. Michigan, S. D.

Dec. 2, 1981.

Hayim I. Gross, Birmingham, Mich., for plaintiff.

Thomas N. Burnham, Nancy L. Hutcheson, Detroit, Mich., for defendant.

OPINION DENYING PLAINTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION

FEIKENS, Chief Judge.

Plaintiff here is attempting to stop defendant Mobil Oil from terminating a franchise agreement under which the plaintiff has sold Mobil Oil products for five years. There is no question about the acts of the plaintiff which led Mobil to terminate the agreement. In the spring of 1981, Mobil learned that plaintiff had been purchasing gas on the open "spot" market and selling it at his Mobil station as Mobil gasoline. Plaintiff concedes that this is contrary to the plain language of its franchise, specifically paragraph 6 of the contract, which essentially prohibits the franchisee, Itin, from selling any product but Mobil's under the Mobil trademark. Mobil notified plaintiff on August 14 of its decision to end the franchise and then only after warning him repeatedly that if he continued to cross-haul fuel he would be terminated. For the reasons discussed in the following paragraphs, I must deny plaintiff's motion for preliminary injunction.

The standard for granting a preliminary injunction in favor of an oil and fuel franchisee like Itin was established by the Petroleum Marketing Practices Act ("PMPA"), codified at 15 U.S.C. § 2801 *et seq.* That Act in 15 U.S.C. § 2805 elaborated three conditions which must be met before a preliminary injunction may issue:

1. "The franchisee shows—(i) the franchise of which he is a party has been terminated ...";

2. "The franchisee shows—(ii) there exists sufficiently serious questions going to the merits to make such questions fair ground for litigation"; and

3. "The court determines that, on balance, the hardships imposed upon the franchisor by issuance of such preliminary injunctive relief will be less than the hardships which would be imposed upon such franchisee if such preliminary injunctive relief were not granted."

The first condition—termination—is satisfied here. Mobil not only admits that it terminated Itin, it insists that the termination was proper according to both its franchise agreement and the standards of the PMPA. Plaintiff has difficulty, however, fulfilling the second condition. Plaintiff and defendant agree, as they must, that the franchisor may terminate an agreement only on the grounds articulated in 15 U.S.C. § 2802(b). In its notice of termination, Mobil rested the termination on Subsection (b)(2)(A) and (C). Subsection (A) of 2802(b)(2) allows termination for "a failure by the franchisee to comply with any provisions of the franchise, which provision is both reasonable and of material significance to the franchise relationship ..." Subsection (C) allows the franchisor to end the franchise if an event occurs "which is relevant to the franchise relationship and as a result of which termination of the franchise ... is reasonable ..." One such event is described in 2802(c)(10): "willful adulteration, mislabeling or misbranding of motor fuels or other trademark violations by the franchisee."

On its face, it appears that Mobil is justified in terminating the franchise: Itin admits that it breached paragraph 6 of the contract and that the breach consisted in misbranding non-Mobil products as those of Mobil, an independent basis for termination under the PMPA. Plaintiff nonetheless asserts that there are serious questions concerning the misbranding which make for fair litigation.

▮ Before considering plaintiff's arguments, a few words are in order concerning the unique standard for preliminary injunction articulated in the PMPA. Plaintiff correctly emphasizes that establishing serious questions which make the suit fairly litigable is not as grave a task as establishing a likelihood of prevailing, the usual standard for a preliminary injunction. This is not to say, however, that plaintiff may obtain a preliminary injunction merely by filing an adequate pleading or showing that there are issues of material fact. Plaintiff must still show, at least, that he may pre-

vail in a suit on the merits. If I find, for instance, after considering the character of plaintiff's evidence at the hearing for the preliminary injunction, that it is unlikely that plaintiff will prevail, I must deny the motion. I assume the plaintiff would present at the hearing a fair example of the evidence he would present ultimately at trial, but in any event, the task of this court is to arrive at some notion of plaintiff's chances for success based upon the evidence that is presented.

▮ Plaintiff's first argument is that although he breached the terms of the contract and misbranded the spot market gas as Mobil's, the conduct was not willful but coerced by the defendant. Plaintiff relies here on Congress' use of the word "willful" in 15 U.S.C. § 2802(c)(10). First, I must point out that this subsection only elaborates on Subsection 2802(b)(2)(C), which allows for termination for significant events. The word does not appear in Subsection (b)(2)(A), which is an independent ground for termination and refers only to breaches of the franchise agreement. But supposing for argument that (b)(2)(A) could not be invoked when the franchisor coerced the breach, I still cannot accept plaintiff's arguments since I do not think that plaintiff has presented sufficient evidence that would suggest any wrongdoing on the part of Mobil, an essential element of coercion.

Plaintiff claims first that Mobil charged prices for its gasoline that were unconscionably high, so high the plaintiff could not compete. He has presented evidence showing that Mobil's tank truck price was from two to approximately eight per cent higher than the spot market price. While I may admit that an eight per cent difference may make competition with nonbranded dealers difficult, plaintiff does not present any evidence of the prices that other branded but non-Mobil dealers were paying for their gas, and it is these dealers against whom plaintiff more appropriately should be comparing himself. One must expect branded refiners to charge more; presumably they offer more: more national marketing, credit card services, franchise administration

(including the enforcement of standards of quality). All of these items cost more and that is reflected in the price of their products.

Itin also alleges that defendant discriminated in its enforcement of its contractual prohibition against crosshauling, but Itin offers no direct evidence to support that claim. At best, Itin has presented testimony that non-Mobil trucks have been seen at other Mobil stations. All this shows is that Mobil has perhaps not been vigilant in policing its policies. Indeed, Mobil only learned of Itin's practices when Itin admitted to them in a deposition for a similar suit against another Mobil franchisee.

Mobil has shown, I believe adequately, that it has enforced its policies against all dealers who have violated the contract. The fact that many violators are still in business need only show, as Mobil insists, that the others, unlike Itin, heeded warnings. I cannot conclude, as plaintiff would have it, that Mobil has either discriminated against it in favor of other Mobil dealers or that Mobil has charged unreasonably high prices which prevented Itin from competing fairly with its true competitors. The first argument fails, therefore, for a want of sufficient evidence.

■ Itin's second argument fares no better. He claims that although he breached the contract and sold non-Mobil gas under the Mobil trademark, it is not significant since paragraph 6 of the contract is void by the dictates of the Sherman Act as a tying arrangement. This is so, Itin argues, because there is no difference in the quality of gasolines. I must point out again that even if plaintiff is correct that paragraph 6 is void, this only eliminates Mobil's first ground for termination under Subsection (b)(2)(A). Subsection (b)(2)(C) still does not allow misbranding and I believe, without deciding, that this statutory allowance would supersede any Sherman Act liability. Plaintiff's most serious failing, however, is again not one of law but of evidence. To show that "gas is gas", Itin has presented his own testimony and that of two other dealers plus an affidavit of the ex-president of the Sinclair Oil Company. None of these men, however, are organic chemists. All are no more than marketing experts or businessmen. None offers any testimony other than their own bald opinions that gas is fungible. Furthermore, the testimony of most of these witnesses must be discounted as self serving. This is obviously the case with the testimony of Itin himself.

■ Plaintiff has also shown that Mobil occasionally purchases gas from some other refiners and delivers it to its dealers. But plaintiff has not shown that Mobil buys any gas from any distributor or how it might treat that gasoline with additives before delivery. Moreover, as Mobil has pointed out, a refiner need not produce its own products to reserve the right to decide which products will bear its trademark. I can no more accept this argument of plaintiff's than I could the first. The presentation was too paltry for me to say that with it plaintiff has much of a chance of success at trial. The character of the evidence was not directed to the issues properly framed.

In concluding as I do that the plaintiff's motion must be denied, I must emphasize the limit of this decision. It is not a dismissal. Plaintiff may still present his case for whatever damages he seeks.

### ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

For the reasons discussed in the accompanying Opinion, plaintiff's motion for preliminary injunction to prevent defendant Mobil Oil Corporation from terminating its franchise agreement with plaintiff is denied.