AMOCO OIL COMPANY v. JULIA A. LUEHRS,
Personal Representative of the
Estate of William J. Luehrs,
Jr. ET AL.

[No. 463, September Term, 1983.]

*Decided October 7, 1983.*

The cause was argued before GILBERT, C. J., and MOYLAN and WEANT, JJ.

*Wilbur D. Preston, Jr.,* and *Ward B. Coe, III,* with whom were *William F. Ryan, Jr.,* and *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellant.

*Kevin P. Fay,* with whom were *William R. Fischer* and *Fay & Smith, P.A.* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

The parties to this appeal, Amoco Oil Company, appellant, and Julia A. Luehrs, Personal Representative of the Estate of William J. Luehrs, Jr., Jon M. Hannam, and James D. Luehrs, appellees, appeared before two different trial courts in two different systems on two successive days and received two distinctly different results. The first decision was handed down by the United States District Court for the District of Maryland. The second decision flowed from the Circuit Court for Montgomery County. The former declined to enjoin Amoco from terminating a lease with Luehrs, while the latter issued the injunction. Because we think the United States District Court to be right and the Circuit Court to be wrong, we vacate the injunction.[1]

## The Facts

On June 3, 1981, Amoco Oil Company and William J. Luehrs, Jr., entered into a three year lease in which Amoco leased to Luehrs a gasoline service station known as "Tyson's Corner Amoco." In October of the same year the parties entered into another agreement for a service station styled "Potomoc Amoco." Both agreements contained provisions which conditioned any proposed assignments by Luehrs on the consent of Amoco, which consent by Amoco

---

1. We are at a loss to understand why the Circuit Court entertained the suit in light of the United States' District Courts' disposition of the matter.

was not to be withheld unreasonably. The terms of the lease allowed Amoco to condition its consent to assignment upon the assignee's acceptance of one year "trial franchises."

William J. Luehrs, upon learning in April of 1982 that he was terminally ill, decided to retire. Luehrs desired to assign his interests in the Tyson's Corner station to his son, the appellee James Luehrs, and the Potomac station to his son-in-law, the appellee Jon Hannam. Luehrs, through his attorney, informed Amoco of his decision to retire and requested its consent to his proposed assignments of the leases to the respective gasoline stations.

After reviewing the proposed assignees' qualifications, Amoco decided to grant each a one year trial franchise, notwithstanding the fact that both parties lacked service station ownership and management experience.

The record shows that the one year trial franchise policy is an endeavor by Amoco to assure that three year leases are granted only to those dealers who are competent to contribute to what Amoco believes to be a strong dealership organization. It is represented by Amoco that heretofore all trial franchises in Maryland, Virginia, and the District of Columbia, save for one, have been converted at the end of the trial period into three year leases.

James Luehrs and Hannam both rejected Amoco's trial lease offer, although each understood that they were virtually assured of extended leases after the trial period. Notwithstanding Amoco's offer of trial franchises and its refusal to consent to his assignments of the three year leases, William Luehrs proposed to assign his lease interests to James Luehrs and Jon Hannam, respectively.

William Luehrs died on December 4, 1982, about one month after he had filed suit in the Circuit Court for Montgomery County. Luehrs, by that suit, sought declaratory relief to the effect that the assignments were valid and that Amoco unreasonably withheld its consent to the transaction. Amoco filed a counterclaim against William Luehrs, joining Hannam and James Luehrs as third parties defendant. Julia Luehrs, the widow of William Luehrs and

the personal representative of his estate, was substituted as a party to the action. Md. Rule 220 (c).

Amoco, by letter dated January 3, 1983, notified Julia Luehrs that the franchise agreements were terminated effective April 2, 1983. Each lease embodied a provision authorizing its termination upon the death of the lessee.

Julia Luehrs, as personal representative, James Luehrs and Joh Hannam responded to the notification of termination by filing suit in the United States District Court for the District of Maryland. The immediate objective of the litigation was a temporary restraining order. The longer range target was the obtaining of an injunction so as to prevent Amoco from terminating the leases. On the same day the appellees filed for an injunction in the Circuit Court for Montgomery County, thus seeking the same relief that was sought in the federal action.

The United States District Court (Ramsey, J.), on April 18, 1983, held that Amoco was entitled to terminate the franchise agreements. He, therefore, denied the request for injunctive relief.

The next day the appellees obtained a ten day *ex parte* injunction in the Circuit Court for Montgomery County. At the expiration of the ten day period the court granted an interlocutory injunction, notwithstanding Judge Ramsey's prior refusal to grant that relief. Amoco appealed.

Amoco contends in a pentad of complex arguments that the injunction issued by the Circuit Court was improperly granted. We need not consider the five issues because we are of the belief that the hearing judge was clearly erroneous in his assessment of the facts and wrong in his application of the law.

The proper exercise of the discretion in granting or denying injunctive relief requires consideration of four factors: 1) likelihood of success on the merits; 2) the "balance of convenience"; 3) irreparable injury, which can include the necessity to maintain the status quo; and 4) where appropriate, the public interest. The party seeking the issuance of the writ bears the burden of justifying the granting of the pre-

liminary injunction. *State Department of Health and Mental Hygiene v. Baltimore County,* 281 Md. 548, 550, 383 A.2d 51, 53 (1977); *Anne Arundel County v. Governor,* 45 Md. App. 435, 455, 413 A.2d 281, 290 (1980).

One reason why the federal court rejected the Luehrs's request for an injunction was that appellees did not demonstrate that they had any *reasonable* chance of success on their cause if and when it is tried on the merits. *See* The Petroleum Marketing Practices Act, 15 U.S.C., § 2801 *et seq.; Itin Oil Co. v. Mobil Oil Co.,* 527 F.Supp. 898 (E.D. Mich. 1981); *Pearman v. Texaco, Inc.,* 480 F.Supp. 767 (W.D. Mo. 1979); *Frisard v. Texaco, Inc.,* 460 F.Supp. 1094 (E.D. La. 1978); *Saad v. Shell Oil Co.,* 460 F.Supp. 114 (E.D. Mich. 1978).

We observe that the federal standard for an interlocutory injunction in Petroleum Marketing Practices cases is considerably less than that of Maryland where, as we have stated, the law requires a showing, *inter alia,* of the *likelihood of success on the trial on the merits. State Department of Health and Mental Hygiene v. Baltimore County, supra; Anne Arundel County v. Governor, supra.*

We believe the Circuit Court erred in granting the injunction because the appellees have not shown a likelihood of success in a trial on the merits. The hearing judge, in setting out his reasons for the issuance of the injunction, did no more than paraphrase the holdings of *State Department of Health and Mental Hygiene v. Baltimore County, supra,* and *Anne Arundel County v. Governor, supra.* Without stating any specifics, the judge found each of the four factors present in the case. He said in his order:

> "Upon consideration of the Plaintiff's and Third-Party Defendant's Motion for interlocutory injunction, the argument of counsel at hearing and all of the proceedings filed herein, including the memoranda filed by the parties and the Order of this Court dated April 29, 1983, good cause having been shown, the Court finds that the Movants have established a likelihood of success on the merits;

that the balance of convenience favors the granting of the interlocutory injunction in that greater harm would result to the Plaintiff and Third-Party Defendants if injunctive relief is refused than would result to the Defendant, Amoco Oil Company, if the interlocutory injunction is granted; that irreparable injury will result to the Movants if the interlocutory injunction is not granted; that it is necessary in this case to preserve the status quo until a final decision on the merits; and that there would be no injury or inconvenience which would result to the public upon the granting of the requested interlocutory injunction . . . ."

On the other hand, Judge Ramsey in a breviloquent articulation of his reasons for denying to appellees the requested relief said, in pertinent part:

"Amoco's offer of a one-year trial franchise and the rejection of those offers by Hannam and James Luehrs and the subsequent assignment by William Luehrs of his rights in the franchise despite the denial of the requested approval by Amoco clearly show that Amoco behaved reasonably, or put the other way, on this record it cannot be said that it unreasonably withheld its consent to the assignment of the franchises of the Potomac Amoco and Tyson's Corner Amoco service stations. As such, I find that Amoco's conduct fully comported with and was not in violation of the Maryland Act, the Virginia Act or paragraph 14 of its franchise agreement with William Luehrs. . . . [T]he Court finds Amoco did not give prior consent to the assignments of the franchises in question by William Leuhrs; that as a result the attempted assignments were ineffective to vest any interest in the franchises in Jon Hannam and James Luehrs; and that the attempted assignments by William Luehrs and his subsequent death constituted events which gave Amoco the right to terminate its

franchises .... Accordingly, I find that the plaintiffs have not met the required showing ... that they have a reasonable chance of success on the merits ...."

We have reviewed the record and fail to find any evidence giving rise to the belief that appellees possess a likelihood of success in the trial on the merits. On the contrary, as Judge Ramsey noted in commenting on the same evidence, there is not even a "reasonable chance of success."

> *Order vacated.*
> *Costs to be paid by appellees.*
> *Mandate to issue forthwith.*