The WISSER COMPANY, INC., Plaintiff-Appellant,

v.

MOBIL OIL CORPORATION, Defendant-Appellee.

**No. 583, Docket 83–7713.**

United States Court of Appeals, Second Circuit.

Submitted Jan. 16, 1984.

Decided March 1, 1984.

Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, P.C., Mineola, N.Y., for defendant-appellee.

Jacob E. Heller, New York City, for plaintiff-appellant.

Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and KEARSE, Circuit Judges.

FEINBERG, Chief Judge.

The questions before us are whether termination of a gasoline station franchise pursuant to sections 102(b)(2)(A) and 102(b)(2)(C) of the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 et seq., requires notice and an opportunity to cure before notice of termination can be given, and whether on the facts of this case a forthwith termination was unreasonable. For reasons given below, we believe that the answer to both questions is no, and we affirm the judgment of the district court.

I.

The subject of this litigation is an automobile service station owned by plaintiff-

appellant The Wisser Company, Inc. (Wisser) in Elwood, New York, and until recently operated under the Mobil trademark pursuant to a franchise agreement with defendant-appellee Mobil Oil Corporation (Mobil). The franchise agreement included a "retail dealer contract" (the contract) and subsidiary contracts providing, among other things, for Mobil to lease an eight-foot sign to Wisser and to loan it a storage tank and pumps.

Mobil alleges that a decrease in Wisser's purchases of gasoline from Mobil beginning in October 1982 made it suspicious that Wisser was purchasing gasoline from other suppliers and selling it to the public through Mobil pumps as Mobil gasoline (misbranding). According to affidavits submitted by Mobil to the district court, Mobil representatives on several occasions discussed their suspicion with William Wisser, an officer of appellant, who denied offering misbranded gasoline for sale at the station. Subsequently, on April 30, 1983, a private investigator hired by Mobil to monitor the station confirmed the misbranding; the investigator observed and photographed a non-Mobil gasoline delivery to the station, and also observed that the station at that time was clearly identified as a Mobil station and that there were no signs identifying the gasoline being sold as anything other than Mobil brand. Consequently, by letter dated June 27, 1983, Mobil notified Wisser that it was terminating the contract and the franchise relationship effective immediately because of misbranding, citing paragraph 6 of the contract and various sections of the PMPA, 15 U.S.C. §§ 2802(b)(2)(A), 2802(b)(2)(B),[1] 2802(b)(2)(C), 2802(c)(10) and 2802(c)(11). Also, pursuant to the equipment loan agreement, Mobil requested Wisser to arrange to return immediately the equipment loaned to it.

In July, Wisser brought an action in the United States District Court for the Southern District of New York seeking injunc-tive relief. After a hearing on Wisser's motion for a preliminary injunction, at which Mr. Wisser and a representative of Mobil testified, Judge Vincent L. Broderick delivered an oral opinion from the bench denying the motion. We are informed that after the district court's decision, Mobil stopped supplying Wisser and removed its operating equipment and trademarks from the premises.

While it is easier for a franchisee to obtain a preliminary injunction under the PMPA than in the usual case, under 15 U.S.C. § 2805(b)(2) Wisser still had to show "sufficiently serious questions going to the merits to make such questions a fair ground for litigation" and the court had to determine that the hardship to Wisser of denying the injunctive relief exceeded the hardship to Mobil of granting it. The district court was inconclusive on the existence of such serious questions, stating "there may be fair grounds for litigation with respect to the merits of the action," but it held that the balance of hardships favored Mobil. The court did find, however, a probability that Mobil would be able to prove that Wisser was selling misbranded gasoline and that Mobil would succeed on the merits. Wisser appeals from the denial of preliminary injunctive relief.

## II.

It is significant that Wisser nowhere denies, and indeed admits, that it was selling non-Mobil gasoline through the pumps loaned to it by Mobil. It claims, however, that when selling such gasoline, it took adequate steps to so advise the public by posted signs and by oral statements to individual customers. Wisser argues that with such precautions the franchise contract permits it to sell non-Mobil products, including gasoline. We do not need to reach this contention because on this record the district court's finding that Mobil probably would be able to show at trial that Wisser was "passing off" the non-Mo-

---

**1.** Mobil has conceded that its reliance on § 2802(b)(2)(B) was improper, as that subsection requires notice and an opportunity to cure, but it argues, and we agree, that the other provisions cited in the termination notice provided adequate independent bases for termination.

bil gasoline as Mobil gasoline is not clearly erroneous; indeed, it is supported by substantial evidence. That such conduct is a ground for termination of the franchise under the contract and under the PMPA cannot seriously be disputed. It is a violation of a provision of the contract that is both "reasonable" and "material" within the meaning of 15 U.S.C. § 2802(b)(2)(A), and it is specifically identified as "an event ... relevant to the franchise relationship" and justifying termination within the meaning of 15 U.S.C. §§ 2802(b)(2)(C), 2802(c)(10) and 2802(c)(11), all of which are reproduced in the margin.[2] See *Di Napoli v. Exxon Corp.*, 549 F.Supp. 449, 452 (D.N.J.1982); *Itin Oil Co. v. Mobil Oil Corp.*, 527 F.Supp. 898 (E.D.Mich.1981); *Haynes v. Exxon Co., U.S.A.*, 512 F.Supp. 543 (E.D. Tenn.1981). Although Wisser raises a plethora of arguments in this court, the only issues warranting discussion are whether the contract or the PMPA required notice of default and an opportunity to cure and whether they required advance notice of termination, thus rendering ineffective a forthwith notice.

The principal franchise contract, the retail dealer contract, consists of a printed form with various typewritten riders. Several of the printed paragraphs contain handwritten deletions and alterations, which are separately initialed by the parties.

Appellant argues that, even if it had sold non-Mobil gasoline through the Mobil pumps without adequate identification, the rider to para. 12 of the contract required notice of default and 20 days in which to cure before, in absence of cure, Mobil could send a second notice terminating the franchise. Appellant contends that this typewritten rider supersedes the language of printed para. 6, under which Mobil has "the right to immediately terminate" the contract for violations of para. 6, including misbranding. The relevant portions of printed paras. 6 and 12 and their respective typewritten riders are reproduced in the margin.[3]

2. Section 2802(b)(2) provides in relevant part:
(2) For purposes of this subsection, the following are grounds for termination of a franchise ...:
(A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship, if the franchisor first acquired actual or constructive knowledge of such failure—
(i) ...
(ii) not more than 60 days prior to the date on which notification of termination ... is given, if less than 90 days notification is given *pursuant to section 2804(b)(1)*....
....
(C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise ... is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—
(i) ...
(ii) not more than 60 days prior to the date on which notification of termination ... is given, if less than 90 days notification is given pursuant to section 2804(b)(1)....
....
Section 2802(c) provides in relevant part:
(c) As used in subsection (b)(2)(C) of this section, the term "an event which is relevant to the franchise relationship and as a result of

which termination of the franchise ... is reasonable" includes events such as—
....
(10) willful adulteration, mislabeling or misbranding of motor fuels or other trademark violations by the franchisee;
(11) knowing failure of the franchisee to comply with Federal, State, or local laws or regulations relevant to the operation of the marketing premises; and
....

3. Printed paragraph 6 provides in relevant part:
6. Brand Names, Trademarks, Advertising. Buyer [Wisser] shall use Seller's [Mobil's] trademarks and brand names to identify and advertise Seller's products, and shall not use such trademarks and brand names for any other purpose. Buyer shall not mix any other products with Seller's products or adulterate them in any way, and shall not use Seller's trademarks or brand names in connection with the storage, handling, dispensing or sale of any adulterated, mixed or substituted products.... Any violation of the provisions of this paragraph by Buyer shall give Seller the right to immediately terminate this contract.... Buyer acknowledges and recognizes that injunctive relief is essential for the adequate remedy of any violation of the provisions of this paragraph by Buyer.
The typewritten rider to paragraph 6 provides in relevant part:

58

Appellant's interpretation does not withstand an examination of the language and the structure of the contract. Printed para. 12 provides for termination "on notice" for defaults generally, and printed para. 6 dispenses with notice for certain defaults, including the "use [of] Seller's trademarks or brand names in connection with the storage, handling, dispensing or sale of any ... substituted products." The typewritten rider to para. 12 expands it to require notice of default and a 20-day opportunity to cure before notice of termination can be given. The typewritten rider to para. 6 adds to it express permission to sell non-Mobil products, but not to misbrand. The rider does not modify or eliminate Mobil's right granted in printed para. 6 to terminate immediately for misbranding. The structure of the printed contract is thereby preserved: Para. 12 and its rider require notice and opportunity to cure for defaults generally; para. 6 and its rider specify particular defaults for which such notice and opportunity to cure are not required before termination. Wisser's default falls within para. 6; accordingly, Mobil was not required under the contract to give notice and an opportunity to cure.

The PMPA, of course, may confer greater rights on a franchisee than are granted in a particular franchise agreement. See 15 U.S.C. § 2802(a). Appellant argues that the PMPA requires notice and an opportunity to cure before notice of termination can be given. As noted above, misbranding is a ground for termination under 15 U.S.C. §§ 2802(b)(2)(A), 2802(b)(2)(C), 2802(c)(10) and 2802(c)(11), sections relied on by Mobil in its notice of termination to Wisser and reproduced in relevant part in note 2 supra. Contrary to appellant's contention, nothing in these provisions or in the related notice provision, 15 U.S.C. § 2804,[4] requires an opportunity to cure. In contrast, § 2802(b)(2)(B), a parallel provision permitting termination for "failure ... to exert good faith efforts to carry out the provisions of the franchise," requires the franchisor to apprise the franchisee "in writing of such failure" and to afford "a reasonable opportunity to exert good faith efforts to carry out such provisions," and allows termination only if the franchisee continues its failure to exercise good faith efforts. See note 1 supra. Similarly, in connection with nonrenewal based

6. Nothing herein shall be construed to prevent Buyer from dispensing for sale products other than Seller's at Buyer's place of business during the original term of this contract, or any extension or renewal thereof, provided that the terms hereof are fully complied with regarding Seller's brand names, trademarks and advertising. . . .

Printed paragraph 12 provides in relevant part:

12. Termination. If Buyer has made any false or misleading statement in his Dealer Application Form CO–303, or has failed to make prompt payment of any sums due Seller under this contract or Seller's retail credit program, or if Buyer is otherwise in default hereunder, Seller may on notice to Buyer terminate this contract or may suspend deliveries during default. . . .

The typewritten rider to paragraph 12 provides in relevant part:

12. The parties hereby agree that should either party default in the performance of any duty, responsibility or obligation imposed by this Contract, and such default continues uncorrected for twenty (20) days then after written notification of such default ... the party aggrieved by such default may upon additional written notice to the other party given,

terminate this Contract, and cease doing further business with the other party as of the date of said notice, unless a longer time be required by law. In the event a longer period is required by law, the parties shall cease doing further business at the end of the minimum period required by such statute.

4. Section 2804 provides in relevant part:

(a) Prior to termination of any franchise ..., the franchisor shall furnish notification of such termination ... to the franchisee who is a party to such franchise. . .—

(1) ...

(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination ... takes effect.

(b)(1) In circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date on which termination ... takes effect, as required by subsection (a)(2) of this section—

(A) such franchisor shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing of such notification is reasonably practicable. . . .

on receipt of numerous customer complaints related to the condition of the premises or the conduct of an employee or based on failure to operate the marketing premises in a clean, safe and healthful manner, the PMPA confers on the franchisee a right to notice and an opportunity to cure or correct. 15 U.S.C. §§ 2802(b)(3)(B) and 2802(b)(3)(C).

■ It is clear from the structure of the statute that Congress meant to give franchisees the right to cure for some kinds of conduct or conditions that if continued would warrant termination or nonrenewal, but did not intend to require a second chance for other kinds of conduct or conditions. See S.Rep. No. 731, 95th Cong., 2d Sess. 33–38 (1978), reprinted in 1978 U.S. Code Cong. & Ad.News 873, 891–97. While the legislative history does contemplate "[f]lexibility ... so that a franchisor may work with a franchisee in an effort to correct the situation and avoid termination ... or nonrenewal," id. at 33–34, 1978 U.S. Code Cong. & Ad.News at 892, it also recognizes that "[s]ome contractual violations, although not readily reducible to a dollar value, may be so serious as to undermine the entire relationship," id. at 18, 1978 U.S. Code Cong. & Ad.News at 876.

■ The misbranding alleged in this case falls into the latter category. The district judge stated that there was "no way" the default could be cured, apparently characterizing it as the very serious type of default that undermines the relationship and that does not call for a second chance. Moreover, the record before the district judge indicated that Mobil had warned Wisser orally not to sell non-Mobil gasoline as Mobil gasoline. This is not a minor or technical violation that would suggest the type of arbitrary or discriminatory termination or overreaching by a franchisor that the PMPA was designed to prevent. Id. at 17–19, 1978 U.S.Code Cong. & Ad.News at 875–77. This case resembles others in which courts have allowed termination or nonrenewal, or have denied a preliminary injunction preventing such action, where a formal opportunity to cure does not appear to have been given. E.g. Escobar v. Mobil Oil Corp., 678 F.2d 398 (2d Cir.1982) (per curiam); Itin Oil Co. v. Mobil Oil Co., supra (misbranding); Haynes v. Exxon Co., U.S.A., supra (misbranding); Crown Central Petroleum Corp. v. Waldman, 515 F.Supp. 477 (M.D.Pa.1981), aff'd, 676 F.2d 684 (3d Cir.1982). It is true that the issue was not even discussed in those cases, perhaps because the proposition that a franchisee always has the right to cure a default is obviously wrong. Here the issue is directly raised, and we hold that terminations pursuant to 15 U.S.C. §§ 2802(b)(2)(A) and 2802(b)(2)(C) do not require notice and opportunity to cure before notice of termination may be given.

### III.

It remains to be decided whether a forthwith notice of termination was adequate. As noted above, Wisser's default falls within paragraph 6 of the contract, which gives Mobil the right to terminate the franchise "immediately." See note 3 supra. The statute, in 15 U.S.C. § 2804(a)(2), normally requires 90-days notice prior to termination, but § 2804(b)(1) provides an exception in circumstances where it would be unreasonable to require the franchisor to give 90-days notice. When the exception applies, notice must instead be given "on the earliest date on which furnishing of such notification is reasonably practicable." 15 U.S.C. § 2804(b)(1)(A). See note 4 supra. As a threshold matter, the termination provisions relied on by Mobil restrict the potential applicability of the less than 90-days exception of § 2804(b)(1) to situations in which the event justifying termination occurs not more than 60 days prior to the date notification is given. 15 U.S.C. §§ 2802(b)(2)(A)(ii) and 2802(b)(2)(C)(ii). See note 2 supra. In the instant case, misbranding was confirmed on April 30 and the notice was given on June 27, within the 60 days.

■ Wisser argues that the date Mobil first had knowledge of misbranding, which Wisser claims was in October 1982, must be within the 60-day period, but the argu-

**60**

ment is patently wrong. The legislative history states, "[T]he time limitations are not intended to stop a franchisor from exercising termination ... rights based upon a future event which constitutes a ground for termination ..., even if such future event is a repeat occurrence of an event with respect to which the previous exercise of termination ... rights was waived." S.Rep., supra, at 34, 1978 U.S.Code Cong. & Ad.News at 892. Furthermore, any delay here was to confirm what Mobil previously merely suspected.

We must decide, therefore, whether the "circumstances" here were such that "it would not be reasonable" to require the more usual 90-days notice of termination of the franchise and, if so, whether Mobil furnished Wisser with such notice on "the earliest date ... reasonably practicable." § 2804(b)(1)(A). These issues apparently have not been decided as yet by this court. *In Escobar v. Mobil Oil Corp.*, 522 F.Supp. 593 (D.Conn.1981), where 48-hours notice of termination had been given for non-payment of rent and other violations, the district court held that on those facts § 2804(b)(1)(A) did not apply and nothing less than 90-days notice was appropriate; the court suggested further that the reduced notice provision embodied in § 2804(b)(1)(A) was intended to apply only to "circumstances created by an outside agency, such as condemnation of the marketing premises." Id. at 600. The question of when the circumstances justify application of § 2804(b)(1)(A) was extensively briefed on appeal, but this court found it unnecessary to reach the question and reversed the district court on other grounds. *Escobar v. Mobil Oil Corp.*, 678 F.2d 398, 400 n. 1 (2d Cir.1982) (per curiam).

In the instant case, the question is again presented and we decide it. While the 90-days notice ordinarily required by the PMPA should not be lightly excused, we do not accept the restrictive "outside agency" interpretation suggested by the district court in *Escobar.* Early versions of the PMPA required 90-days notice for all terminations, regardless of the cause, see, e.g., H.R. 16510 and S. 1694, reprinted in Fran-

chised Petroleum Dealers: Hearings on H.R. 16510 ... before the Subcomm. on Communications and Power of the House Comm. on Interstate and Foreign Commerce, 93rd Cong., 2d Sess. 3–9, 24–27 (1974). The legislative history and hearings, however, indicate that § 2804(b)(1)(A) was added to dispense with the lengthy notice requirement where, for example, a franchisee committed serious defaults of the franchise agreement, such as misbranding. See S.Rep. No. 120, 94th Cong., 1st Sess. 8 (1975) (predecessor bill, S. 323; misbranding specifically identified as circumstance warranting less than 90-days notice of termination); Petroleum Marketing Practices: Hearings on H.R. 13000 ... and S. 323 before the Subcomm. on Energy and Power of the House Comm. on Interstate and Foreign Commerce, 94th Cong., 2d Sess. 334–36, 340–41 (1976).

In light of the gravity of Wisser's conduct, we conclude that Wisser has not raised a serious question as to the reasonableness of the forthwith notice of termination. If Wisser was engaged in passing off non-Mobil gasoline under the Mobil trademark, as the district court found Mobil probably would be able to prove, Wisser was committing a serious violation of Mobil's contract and property rights and it was perpetrating a fraud on the public. There was also evidence before the district court that this conduct had been going on for as long as six months before Mobil was able to confirm it. We believe that Mobil was justified in taking steps to stop this practice and to disassociate itself from Wisser immediately. Were Mobil required to wait 90 days or some shorter period between notice and the effective date of termination, there is no reason to believe that Wisser would not have used the time to continue its alleged misbranding to its profit. Moreover, Wisser owned the premises, so it was not faced with immediate eviction and associated financial ruin, and Wisser owns a number of other service stations. True, Mobil recovered its signs and operating equipment from the premises, but Wisser had no right to continue to use Mobil's

trademark, and it would not be unduly burdened by having to rent or buy operating equipment of its own. Wisser thus could continue to sell gasoline it was buying from other sources, but not under the Mobil trademark, with perhaps a temporary delay while Wisser obtained and installed substitute equipment. Under the circumstances, forthwith termination was reasonable. See *Esso Standard Oil Co. v. Vargas*, Civ. No. 79-570 (D.P.R. Oct. 24, 1979) (motion to dismiss; less than 10-days notice of termination for misbranding held reasonable under 15 U.S.C. § 2804(b)(1)(A)).

### IV.

As noted earlier, Wisser has raised numerous arguments on appeal. We have discussed only a few, but we have considered them all and find them to be without merit. In denying a preliminary injunction, the district court did not decide whether there were "fair grounds for litigation," but rested on its conclusion that the balance of hardships favored Mobil. We believe, however, that in the district court Wisser did not raise any "sufficiently serious questions going to the merits to make such questions a fair ground for litigation." Thus, Wisser was not entitled to a preliminary injunction regardless of the relative hardships. Even if Wisser had raised such serious questions on the merits, on this record we find adequate support for the district court's determination that the hardship to Mobil of granting the requested preliminary injunction would outweigh the hardship to Wisser of denying it. As already indicated, Wisser would not be unduly burdened by the removal of the Mobil equipment and trademark, and the injury to Mobil inherent in selling misbranded gasoline is serious.

The judgment of the district court is affirmed.