Titus E. OPARAOCHA, Plaintiff,

v.

SUN COMPANY, INC., Defendant.

Civil Action No. 96-1808 (JLG).

United States District Court, District of Columbia.

March 18, 1998.

Harry C. Storm, Abrams West & Storm, P.C., Bethesda, MD, for Plaintiff.

Kathleen A. Ellis, Piper & Marbury, Baltimore, MD, for Defendant.

## MEMORANDUM

JUNE L. GREEN, District Judge.

Before the Court are two separate matters: Plaintiff's Motion for Exemplary Damages and Plaintiff's Motion for Attorney's Fees, Expert Witness Fees and Non–Taxable Costs. For the reasons that follow, the Court grants each of Plaintiff's motions.

## BACKGROUND

Plaintiff, a gasoline station and convenience store franchisee, brought this action to recover damages from the Defendant, the franchisor, for violations of the Petroleum Marketing Practices Act ("the PMPA"), the District of Columbia Retail Service Station Act ("the RSSA") and the common law. The common law claims included fraud and breach of contract. Trial in this case concluded on November 7, 1997, with a jury verdict in favor of the Plaintiff on all of his claims. The jury awarded Plaintiff $155,000. Thereafter, the Defendant filed a motion for a new trial while the Plaintiff filed the instant motions. The Defendant's motion for a new trial was denied on February 26, 1998.

## DISCUSSION

### Motion for Exemplary Damages

■ Plaintiff seeks exemplary or punitive damages for Defendant's violation of the PMPA. The PMPA allows for the award of exemplary damages in cases where the conduct of the franchisor "was in willful disregard" of the statute or the "rights of the franchisee thereunder...." See 15 U.S.C. §§ 2802, 2803, and 2805(d)(1)(B). To define "willful disregard" in this context, Plaintiff cites *Eden v. Amoco Oil Co.*, 741 F.Supp. 1192, 1194 (D.Md.1990), which states: "[A] franchisor will be found to have acted with willful 'disregard' of the statutory requirements or with regard to the rights of a franchisee if the franchisor either knew its conduct was prohibited by the PMPA or if the franchisor acted with plain indifference to its prohibitions." The definition Defendant cites for willful disregard is not inconsistent: an act "that is not merely negligent but ... [which has] been taken with deliberate or intentional disregard to the requirements of the statute." *Hoai v. Sun Refining & Marketing Co.*, 1991 WL 242116, *2 (D.D.C.1991), order aff'd, 18 F.3d 953, 1994 WL 85049 (D.C.Cir.1994).

As the basis for his exemplary damages request, Plaintiff states that the jury, by finding for him, necessarily accepted his evidence of disparate treatment in violation of the PMPA's purpose of preventing arbitrary and discriminatory conduct. The Plaintiff also argues that it was the Defendant's wrongful conduct that caused the termination of Plaintiff's franchise.

In the Court's view, these two arguments standing alone do not make out a sufficient showing of "willful disregard." The Court cannot assume that the jury verdict alone showed a considered disregard for the PMPA. Moreover, Defendant offered evidence at trial that it considered and followed the PMPA in its decisions leading up to the franchise termination. Test. of J. Conklin at 47–48. On such a record, without more, the Plaintiff cannot show by the requisite "clear and affirmative" standard that Plaintiff willfully disregarded the PMPA. *Hoai* at *2.

That, however, is not the end of the analysis. Plaintiff's last basis for exemplary damages, that the franchise termination was pretextual, is also his most convincing. Plaintiff's argument is that Defendant used an improper basis to avoid the 90–day notice provision prior to termination as required under the PMPA. *See* 15 U.S.C. § 2804. That basis is alleged to be Defendant's wish to avoid the bankruptcy process when it appeared the Plaintiff might attempt to avail himself of protection under the bankruptcy laws.

■ A valid termination under the PMPA requires 90 days advance notice except where it would be unreasonable to do so. 15

U.S.C. § 2804(b)(1). Even then, however, notice must be given on the "earliest date" that is "reasonably practicable." 15 U.S.C. § 2804(b)(1)(A). The 90–day notice requirement is an important provision of the PMPA and should not be lightly excused. *See Wisser Company Inc. v. Mobil Oil Corp.*, 730 F.2d 54 (2d Cir.1984). In the present case, there is no dispute that less than 90 days was given for termination of the franchise. The point of contention at trial was whether the shorter period was justified. The jury found no such justification when it returned a verdict that Defendant violated the PMPA by terminating Plaintiff's franchise in March of 1996. Verdict Sheet, Questions 1 and 2. In other words, while it is settled that the franchise termination was wrongful, whether it was also in "willful disregard" of the PMPA is the question that concerns the Court.

■ To prove "willful disregard," Plaintiff provides a copy of an electronic mail message ("e-mail"). Mtn. for Exemplary Damages, Exhibit 1.[1] The e-mail was sent from Judith A. Luff to Charles J. Bullard and states in relevant part:

> I spoke with Mike Day today and he indicated that Mr. Oparaocha was still out of gas and that he was in danger of filing for bankruptcy. "I would recommend termination prior to his filing—once he files we need to go to the bankruptcy court and file a petition to Lift a Stay." [Sic] Mike also told me that Mr. Oparaocha might have a buyer.

*Id.* Attached to the e-mail was a proposed termination letter for Titus Oparaocha. The e-mail response to this message was: "Judy, we are sending out the letter today 3/22 overnight. Thanks Chuck."

This "affirmative" evidence (along with the trial record) makes clear to the Court, notwithstanding any other reason Defendant may have had for terminating the franchise, that it sought to avoid the 90–day notice requirement of the PMPA because it did not want to go through a potential bankruptcy proceeding. The Defendant apparently decided that if it waited (even five days), Mr. Oparaocha might have filed for bankruptcy and then additional action in the Bankruptcy Court would have been necessary. Although bankruptcy protection may have given Mr. Oparaocha the time needed to sell the franchise, the Defendant was concerned about any delay this would cause and apparently decided that it simply would be easier to terminate the franchise without the 90 days notice than to risk a bankruptcy filing by Plaintiff. The Court concludes that this is an improper basis to avoid the 90–day notice requirement and shows a "willful disregard" of the PMPA.

■ Having decided that exemplary damages are appropriate, the Court must next decide an appropriate amount. The Plaintiff has asked for $100,000, and has provided financial reports of Sun Co. to show why such an amount is reasonable. Mtn. for Exemplary Damages, Ex. 2. The Defendant has not addressed the question of the amount, objecting instead to any award for exemplary damages. Based upon the financial information of the Defendant as provided by the Plaintiff and given the nature and impact of Defendant's conduct in this case, the Court concludes that the requested $100,000 is a reasonable amount for exemplary damages and awards that amount.

### Motion for Attorney's Fees, Expert Witness Fees and Non–Taxable Costs

Plaintiff seeks attorney's fees under both the PMPA and the District of Columbia's RSSA. The Defendant opposes this request on the basis that attorney fees are only permitted for the two statutory counts and cannot include fees for work performed either on the bankruptcy issue or the fraud claim.

■ The parties are correct that both the PMPA and the RSSA make provisions for the payment of a successful plaintiff's attorney's fees.[2] The first step in any such fee

---

1. Although the Defendant states that the e-mail was not offered as evidence at trial, it provides no authority for why the Court may not consider it now. Moreover, there is no dispute as to the authenticity or accuracy of this exhibit.

2.

    PMPA: (1) If the franchisee prevails in any action under subsection (a) [maintenance of civil action by franchisee against

award analysis is whether the Plaintiff is a "prevailing party." *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). There can be no dispute that Plaintiff has prevailed to a substantial degree. In addition to a jury award of $155,000, Plaintiff, by this very Memorandum and Order, is awarded exemplary damages of $100,000.

■ Although Defendant objects to the non-statutory attorney's fee request, the Court finds no basis to segregate the claims for attorney's fee purposes. As the Supreme Court stated in *Hensley:*

> [The] plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* 461 U.S. at 435.

Such an approach makes especially good sense where, as here, one of the determining legal questions in this case involved whether Plaintiff even had standing to maintain this lawsuit. In its initial motion for summary judgment, Defendant argued that Plaintiff's failure to list Sun Co. as a creditor in his bankruptcy application, removed any standing he may have had to bring the lawsuit. The Plaintiff was required to respond to that argument or risk dismissal of the entire case. It would not be consistent with the reasoning of *Hensley* for the Court now to separate that issue from the others in awarding attorney's fees.

■ The fraud claim, however, is another matter. There is some authority for Defendant's argument that attorney's fees are not available for the non-statutory claims, in this case fraud. *See Jones v. Crew Distributing Co., Inc.,* 984 F.2d 405, 409 (11th Cir.1993) (PMPA does not entitle plaintiff to fees that "arose from his state law claims and [plaintiff] bears burden ... of adequately supporting claim for fees under the PMPA.") The Plaintiff, however, has demonstrated that the claims here were so interrelated that it is not feasible to segregate them. In fact, Plaintiff has answered each of Defendant's objections (to particular entries) showing that the time reported involved work on the entire case, rather than on one or more individual claims. *See* Pl. Reply at 4–6.

■ Defendant's remaining objections involve specific entries on the Plaintiff's attorney's billing sheets for work billed at attorney rates. First, Defendant objects to two entries, July 11, 1996, and July 31, 1997 (4.10 hours and .90 hours respectively), stating that attorneys are not permitted to bill at attorney rates for clerical tasks. The July 11, 1996 entry states "Review complaint; organize documents from client; review file." Two of the three are unquestionably attorney activities (review complaint, review file). The third (organize documents), read in this context, is also a permissible billing because the Court assumes the activities were done in conjunction with one another. In other words, while reviewing the documents in the file, the attorney, in all likelihood, was putting them in some kind of order.

■ The July 31, 1997 billing by Cathy Borten for "locating documents" is similarly objected to as a clerical task. The Plaintiff, however, explains in his Reply that locating the documents required more than simply finding them. The document compilation involved "pulling the necessary documents together to accompany the opposition [to the Motion for Summary Judgment]." Pl. Reply

franchisor], such franchisee shall be entitled ...
(C) to reasonable attorney and expert witness fees to be paid by the franchisor unless the Court determines that only nominal damages are to be awarded to such franchisee, in which case the Court, in its discretion, need not direct that such fees be paid by the franchisor.

15 U.S.C. § 2805(d)(1)(C).

RSSA: (3) The court may, unless the action was frivolous, direct that costs of the action, including reasonable attorney and expert witness fees, be paid by the distributor.
D.C.Code § 10–226(2)(3).

at 6. The Court concludes that compiling and deciding which documents to attach to a substantive Court filing is not clerical in nature and may be billed at an attorney's rate.

Lastly, Defendant objects to $244.75 in courier charges because Plaintiff allegedly has failed to show that these costs were necessarily incurred in this case. The Court rejects Defendant's objection outright. The courier expenses are contained in Exhibit "C" of Plaintiff's motion which is titled "Affidavit of Harry C. Storm." Under penalty of perjury, Mr. Storm lists those courier charges that relate to this case. Defendant has offered nothing that would question Mr. Storm's honesty or integrity.

## CONCLUSION

The Court concludes that the conduct of Defendant was in willful disregard of the PMPA and the Plaintiff is therefore entitled to exemplary damages in the amount of $100,000. Moreover, the Plaintiff is entitled to attorney's fees, expert witness fees and non-taxable costs as requested in his motion. Accordingly, for the reasons stated, Plaintiff's motions are granted. A separate Order accompanies this memorandum.

### ORDER

Upon consideration of the Plaintiff's Motion for Exemplary Damages and separate Motion for Attorney's Fees, Expert Witness Fees and Non–Taxable Costs, the oppositions and replies thereto, the Plaintiff's Supplement to Motion for Attorney's Fees (without opposition), and for the reasons stated in the accompanying memorandum of law, it is by the Court this 16th day of March 1998,

**ORDERED** that Plaintiff's Motion for Exemplary Damages is **GRANTED** and Defendant shall pay Plaintiff $100,000.00 in exemplary damages; it is further

**ORDERED** that Plaintiff's Motion for Attorney's Fees, Expert Witness Fees and Non–Taxable Costs is **GRANTED** and Defendant shall pay the following:

| | |
|---|---|
| Attorney's Fees | $ 99,876.00 |
| Expert With Fees | $ 756.75 |
| Non–Taxable Costs | $ 1,257.59 |
| TOTAL: | $101,890.34 |

This amount shall be added to the Judgment in this case.