MARATHON PETROLEUM CO.,
Plaintiff–Appellee,

v.

Guy R. PENDLETON,
Defendant–Appellant.

No. 88–3799.

United States Court of Appeals,
Sixth Circuit.

Argued April 13, 1989.

Decided Nov. 20, 1989.

Robert R. Weller (argued), Jones, Day, Reavis & Pogue, Cleveland, Ohio, Susan Z. Haller, Jones, Day, Reavis & Pogue, Washington, D.C., for plaintiff-appellee.

James F. Burke, Jr. (argued), Burke & Rawlings, Akron, Ohio, for defendant-appellant.

Before JONES, WELLFORD and GUY, Circuit Judges.

NATHANIAL R. JONES, Circuit Judge.

Defendant-appellant, Guy R. Pendleton, appeals from the district court's ruling that plaintiff-appellee, Marathon Petroleum Company (Marathon), could terminate Pendleton's franchise. For the following reasons, we affirm the decision of the district court.

### I.

Pendleton first obtained a franchise to a Marathon gas station in October 1983. The lease and franchise agreements became effective on December 30, 1983 and were scheduled to expire on November 30, 1986. J. App. at 57. Under the franchise agreement, Pendleton purchased gasoline and other service station products on credit from Marathon. Under the lease agreement, Pendleton was obligated to pay the sum of $1,333.00 per month. *Id.* Between December 1983 and January 1985, Pendleton developed an outstanding debt with Marathon, though the specific amount is disputed.

In January 1985, Marathon and Pendleton agreed to a payment plan to reduce the debt, which provided that Pendleton pay Marathon an additional $250 for each new load of gasoline and make all payments for gasoline at the time of delivery. By May 1985, Pendleton had reduced his overall debt to Marathon to $15,830.72. On May 31, 1985, Pendleton and Marathon formalized the repayment schedule. Pendleton executed a promissory note (note), which provided for repayment of the outstanding debt, with interest at 13% per annum, at the rate of $250 per load of gasoline delivered, and with a maximum payment per month of $750. In consideration for Pendleton's execution of the note, Marathon cancelled the debt in the open account. From May 31, 1985 until March 27, 1986, Pendleton met his obligation to make payments under the note. No further payments were made on the note after March 27, 1986.

In January 1986, Marathon assigned Pendleton a new marketing representative, William E. Cramer. Noting that Pendleton's statement reflected an overdue balance of $3,347.93, including January and February rent, Cramer met with Pendleton in February 1986. Cramer testified that they discussed the overdue rent and balance, and the note, though Cramer was unaware that Pendleton was current on the note at that time. Cramer also suggested that Pendleton consider selling his business along with a mutual cancellation of the franchise.

During a meeting in March, Pendleton informed Cramer that he had two potential buyers for his station, Mr. Lapidakis and Mr. Weitzel. Since Marathon had the right to choose the franchisees and to refuse assignment of the lease, Pendleton asked Cramer to speak with the prospects and consider them for the station. After meeting with the two prospects, Cramer informed Pendleton that they would not be suitable. Despite encouraging Pendleton to sell his business, Cramer persistently recommended the termination of Pendleton's franchise because of Pendleton's continuing overdue balance, his "blasé attitude," and the deteriorating conditions of the station.

On April 18, 1986, Marathon's district manager, Mr. Rissner, recommended to the manager of Marathon's Retail Marketing Division, Mr. Markel, that Pendleton be terminated as a dealer for failure to pay Marathon in a timely manner. Rissner's recommendation was based on: (1) delinquent rent; (2) delinquent fuel and accessories purchases; (3) missed payments on the note; (4) the operator's attitude; and (5) the possibility of bankruptcy. J.App. at 435. On April 24, 1986, Marathon sent a notice of termination to Pendleton giving him only 10 days notice. J.App. at 61. Markel testified that there were two primary reasons for giving Pendleton 10 days rather than 90 days notice. First, Markel believed, based on his conversation with Rissner, that Pendleton's pay habits and delinquency problems could not be resolved and that the business operation would continue to decline. Second, Markel was concerned with the condition of the business operation.

On May 30, 1986, Marathon filed an action against Pendleton in the United States District Court for the Northern District of Ohio, Judge David D. Dowd presiding. Marathon requested the following: (1) a declaratory judgment that Pendleton's service station lease and franchise relationship was properly terminated under the Petroleum Marketing Practices Act, Pub.L. No.

95–297, 92 Stat. 322 (1978) (PMPA), codified at 15 U.S.C. §§ 2801–2841 (1982); (2) an injunction returning possession of the service station to Marathon (which became moot on August 1, 1986, when Pendleton returned control of the station to Marathon); and (3) recovery of over $21,000 owed to Marathon on account, along with expenses and fees. On July 14, 1986, Pendleton filed a counterclaim alleging that Marathon intentionally interfered with Pendleton's business relationships by not granting a lease of the service station to a candidate of Pendleton's choice.

On March 10, 1987, the district court granted partial summary judgment to Marathon, finding that Marathon acted reasonably in terminating the franchise arrangement. The court also denied Pendleton leave to file an amended counterclaim— alleging wrongful termination, breach of contract, and tortious breach—on the ground that such an amendment would be futile.[1] On October 21, 1987, the district court held that because Pendleton's counterclaim concerning interference with business relationships required the seating of a jury, it would be tried at a future time. Marathon's complaint was tried on November 4 and 5, 1987. On May 16, 1988 the court decided that Marathon acted reasonably in terminating its franchise relationship with Pendleton on 10 days' notice, and awarded Marathon judgment in the amount of $19,582.44. The court also granted Pendleton's motion to amend his pleadings to conform to the evidence, in order to assert his counterclaim for wrongful termination, but the court found in favor of Marathon on this counterclaim because Marathon's termination complied with the PMPA. The district court did not hear or decide Pendleton's remaining counterclaim. On August 26, 1988, Pendleton appealed the decision to this court.

## II.

Title I of the PMPA regulates the relationship between the franchisor and fran-

chisee in the gasoline industry. Under the PMPA, a franchisor is precluded from terminating a franchisee unless it satisfies the requirements of section 2802:

> (b) ... (2) For the purposes of this subsection, the following are grounds for termination of a franchise....
>
> \*     \*     \*     \*     \*     \*
>
> (C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—
>
> \*     \*     \*     \*     \*     \*
>
> (c) As used in subsection (b)(2)(C) of this section, the term "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes such events as—
>
> \*     \*     \*     \*     \*     \*
>
> (8) failure by the franchisee to pay the franchisor in a timely manner when due all sums to which the franchisor is legally entitled.

15 U.S.C. § 2802 (1982).

The district court held that Pendleton's failure to make timely payments to Marathon "was an event upon which Marathon reasonably could base its decision to terminate the franchise relationship with Pendleton" because the PMPA "defines late payment of sums due as a reasonable basis for termination of a franchise agreement." J. App. at 145. Consequently, the district court decided that it was not authorized to make an ad hoc examination of whether termination of a particular franchise relationship because of late payments was reasonable. *Id.*

---

1. Pendleton's claim that the district court erred by denying his motion for leave to amend his counterclaim is meritless because the district court's denial was not certified and therefore not a final judgment. Accordingly, no appeal lies from that ruling. *Encoder Communications, Inc. v. Telegin,* 654 F.2d 198, 202 (2d Cir.1981).

Pendleton contends that his payments were "timely" in view of the established course of dealings between the parties because Marathon consistently accepted late payments. Pendleton claims that the legislative history regarding section 2802(c)(8) clearly provides that the standard of "timely" payments permits evaluation of nonpayment or late payment in view of prevailing commercial or industry trade practices. Examining Marathon's prevailing commercial practice, Pendleton's affidavit indicates that many other Marathon franchisees paid their rent late. Pendleton also relies on the district court's findings concerning the course of dealing between the parties: "Marathon engaged in the practice of allowing Pendleton to carry a month to month overdue account balance of approximately $3,000 to $6,000;" and "Marathon engaged in a practice or course of dealing with Pendleton wherein it permitted Pendleton to be at least one month in arrears in his rental payments." J. App. at 367–68.

■ Marathon contends that this court is not required to look beyond the *per se* grounds for termination set forth under the Act to determine whether termination was reasonable. We do not find Marathon's argument for a *per se* termination rule persuasive. In *Darling v. Motor Oil Corp.*, 864 F.2d 981, 990 (2d Cir.1989), the court stated that in termination cases, "the PMPA creates rights separate and apart from the franchise agreement, which the courts must evaluate in order to determine whether the decision to terminate was reasonable." *See also Slatky v. Amoco Oil Co.*, 830 F.2d 476, 481 (3rd Cir.1987) ("Congress did not, however, preclude courts from scrutinizing the merits of termination or nonrenewal decisions that result from a franchisee's misconduct.") Following *Darling's* objective standard, we must scrutinize the reasonableness of terminations even when an event enumerated in § 2802(c) has occurred.

■ The issue in the instant case is whether, under the PMPA, Marathon's past practices of accepting late payments precluded it from terminating the franchise on that basis. Assessing all the relevant facts in the record, it is apparent that Pendleton was chronically late in making his payments to Marathon. Although Marathon had permitted the defendant's delinquent payments to continue for some time (an overdue balance of $3,000 to $6,000 and at least one month in arrears in rental payments), the district court determined that Marathon's practice of accepting late payments did not amount to an amendment to the franchise agreement. Furthermore, Pendleton was on notice that his failure to catch up with rental payments would not be tolerated indefinitely. Thus, because Pendleton was late two months in his rent payments, and because he had been on notice that his past practices of late payments would not be condoned, we find that Marathon acted reasonably in terminating Pendleton's franchise agreement.

## III.

■ Pendleton also contends that Marathon failed to satisfy the notice provisions of section 2804(a)(2), which requires a franchisor to give 90 days notice of termination to the franchisee. However, section 2804(b)(1) provides an exception in circumstances in which it would not be reasonable for the franchisor to furnish 90 days notice. In such cases, the franchisor shall give notice to the franchisee "on the earliest date" which is "reasonably practicable." 15 U.S.C. § 2804(b)(1)(A) (1982).

This court must decide whether it was reasonable under the circumstances for Marathon to furnish less than 90 days notice under section 2804(b)(1). We will not disturb the factual finding of reasonableness by the district court unless it was clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–1513, 84 L.Ed.2d 518 (1985). In *Wisser Co. v. Mobil Oil*, 730 F.2d 54, 60 (2d Cir.1984), the court upheld an immediate termination of the franchise agreement without 90 days notice because the franchisee was misbranding the gasoline. After locating evidence in the legislative history indicating that § 2804(b)(1)(A) was added to dispense with the lengthy notice requirement, the Second Circuit held

that immediate termination was reasonable under the circumstances. *See also Desfosses v. Wallach Energy Inc.*, 836 F.2d 22, 29 (1st Cir.1987) (the court held that the language of section 2804(b)(1)(A) does not restrict its application only to wrongful conduct and serious defaults of the franchise agreement, but also applies to failure to obtain financing pursuant to agreement between the parties.).

In this case, the district court found that Marathon acted reasonably in providing Pendleton less than 90 days notice under section 2804(b)(1)(A). In particular, the court found that Pendleton's declining interest in operating the station and his failure to maintain adequate gasoline supplies was a sufficient reason for giving less than 90 days notice before terminating the franchise agreement.

■ Finally, Pendleton argues that the contract provisions in the lease which require 90 days notice prior to termination should govern. Section 6(a)(iii) of the lease provides that 90 days notice shall be given when, among other things, the lessee fails to maintain the leased premises in a clean, safe, orderly, sanitary and good operating condition. J. App. at 58. However, we note that Marathon had another reason for termination besides the condition of the premises, because of the chronically late payments by Pendleton. Section 6(a)(ii)(C) of the lease allows termination with 10 days notice for failure to make timely rental payments. *Id.* Since Pendleton did not fulfill his payment obligations, we find that termination with 10 days notice was compatible with the requirements of the lease. Thus, we find that there is no basis for concluding that the district court's decision to permit less than 90 days notice was erroneous.

### IV.

Accordingly, the judgment of the district court is AFFIRMED.