Saul ZIPPER, Plaintiff,

v.

SUN COMPANY, INC., Defendant.

No. 95–CV–3515 (JG).

United States District Court,
E.D. New York.

Nov. 5, 1996.

---

Maurice H. Blum, New York City, for Plaintiff.

Peter F. Tamigi, Carole A. Burns & Associates, Mineola, NY, for Defendant.

## MEMORANDUM AND ORDER

GLEESON, District Judge:

Plaintiff Saul Zipper asserts claims under Title I of the Petroleum Marketing Practices Act ("the PMPA"), 15 U.S.C. § 2801 *et seq.*, and related claims for breach of contract, fraudulent misrepresentation and declaratory judgment. He seeks damages and an order voiding the cancellations of two petroleum franchise stations in Brooklyn, one on Flatlands Avenue and one on Remsen Avenue. Sun Company, Inc. (R & M) ("defendant" or "Sun"), in its answer, submitted 19 affirmative defenses and 6 counterclaims, most of which are not germane to the present motion. Defendant now moves for partial summary judgment. It seeks a declaration that the termination of the Flatlands Avenue franchise agreement was valid, and an order requiring plaintiff to surrender the station to Sun. Sun also seeks an order dismissing the claims related to the Remsen Avenue station on the ground that those claims have been released. The Defendant's motion is denied with respect to the termination of the Flatlands Avenue franchise and granted with respect to the claims arising out of the Remsen Avenue franchise.

## FACTS

### A. The Flatlands Avenue Station

In 1985 or 1986, Zipper and Sun entered into the first of four franchise agreements regarding Zipper's operation of a Sun franchise on Flatlands Avenue. Zipper contends that, during his management of the Flatlands station, Sun promised to renovate the premises and to reduce his rent costs. He further alleges that neither promise was kept; instead, as early as 1994, Sun began developing renovation plans for the station, which it submitted to the City Planning Department without Zipper's consent. Additionally, there is some dispute as to whether, in 1995, Sun commenced negotiations with outside parties to take over the Flatlands station.

On May 30, 1995, Zipper was robbed of approximately $10,000. On the next day, a check given to Zipper from one of his customers bounced. As a result, beginning in early June 1995, three of Zipper's checks to Sun, for rent, gasoline and other products, bounced. In addition, Zipper stopped selling gasoline to the public, although his station remained open. Zipper maintains that his failure to sell gasoline was based upon Sun's refusal to accept cash payments for gasoline purchases. Sun counters that it did not sell gasoline to Zipper because his account was seriously in arrears.

By letter dated July 27, 1995, Sun advised Zipper that it was terminating his franchise at the Flatlands station "effective immediately," and that Sun intended to enter the Flatlands premises on Friday, August 4, 1995. Sun informed Zipper that its termination was based upon various breaches of the franchise agreement and the PMPA, including a failure to sell gasoline for 7 consecutive days and a failure to timely pay Sun all sums to which it was entitled. The letter stated that Zipper owed Sun $35,000.

By letter dated August 1, 1995, Sun revised the amount owed by Zipper to $67,000. Zipper currently remains in possession of the Flatlands station, although he has neither

paid any rent nor sold any Sun gasoline since the summer of 1995.

### B.  *The Remsen Avenue Station*

Beginning in 1990, Zipper also began operating another Sun franchise on Remsen Avenue. He contends that he was promised that his Remsen rent would be lowered, which promise was not fulfilled. In addition, Zipper contends that in 1993, he was coerced into participating in a marketing scheme known as "Zero Pool Margin," which effectively eliminated his operating profits.

Zipper alleges that he was told by Sun in July 1993 that it would not charge Zipper less money for his Remsen station rent than it was currently charging him. Relying on this statement, on July 26, 1993, Zipper entered into an agreement with Sun to release both parties' obligations with respect to the Remsen station. After the cancellation agreement was signed, Sun offered the franchise to Musa Yanni for about one-half of Zipper's rent.

### C.  *The Commencement Of This Action And The Pending Motion*

In August 1995, Zipper commenced this action, in which he seeks (i) an injunction preventing Sun from terminating the Flatlands Avenue franchise and requiring the resumption of franchise operations; (ii) damages for breach of contract with respect to both franchise agreements; (iii) damages for alleged fraudulent misrepresentations with respect to both franchise agreements; and (iv) a declaratory judgment modifying the rental provisions in both franchise agreements.

Defendant now moves for partial summary judgment. With respect to the Flatlands Avenue station, defendant seeks (i) the rejection of plaintiff's statutory claims; (ii) a declaration that its termination of the franchise was valid; and (iii) an injunction to compel plaintiff to vacate the station premises. Plaintiff responds that Sun lacked adequate grounds for termination under the PMPA, and that Sun's notice of termination was insufficient under the PMPA. I conclude that although defendant had the requisite statutory grounds for termination, it failed to

supply plaintiff with adequate notice of termination; thus, the termination was invalid under the PMPA.

With respect to the Remsen Avenue station, defendant moves for summary judgment on the plaintiff's breach of contract and fraud claims, alleging that such claims were released by the cancellation agreement executed by both parties on July 30, 1993. Plaintiff does not contest the terms of the cancellation agreement, but instead attacks it on the grounds of fraud and duress. Since plaintiff's claims of fraud and duress are legally insufficient, defendant's motion with respect to the Remsen station claims is granted.

### DISCUSSION

### A.  *The Summary Judgment Standard*

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is upon the moving party to demonstrate that no genuine issue of material fact exists, and all ambiguities must be resolved and all inferences drawn in favor of the non-moving party. *Gallo v. Prudential Residential Services, Limited Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994).

To survive a summary judgment motion, a plaintiff must make a showing sufficient to establish the existence of the elements essential to its case. *Mount Vernon Fire Ins. v. Creative Housing,* 797 F.Supp. 176, 179 (E.D.N.Y.1992). When no rational juror could find in favor of the non-moving party because the evidence to support its case is so slight or non-existent on a material element, there is no genuine issue of material fact and a grant of summary judgment is proper. *Gallo,* 22 F.3d at 1224.

### B.  *The Petroleum Marketing Practices Act*

The PMPA tinkers with the economic relationship between petroleum companies and their franchise station operators. Con-

gress perceived a "David versus Goliath aspect of the relationship between the small retailer franchisee and the giant petroleum company franchisor, and aimed at making that relationship more equal." *Darling v. Mobil Oil Corp.*, 864 F.2d 981, 982 (2d Cir. 1989). As the Second Circuit has noted, "[t]he overriding purpose of the PMPA is to provide 'protection for franchisees from arbitrary or discriminatory termination or non-renewal of their franchises.'" *Mobil Oil Corp. v. Karbowski*, 879 F.2d 1052, 1055 (2d Cir.1989) (quoting S.Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.Code Cong. & Admin.News 873, 874 ("Senate Report")). "Such protection was needed to curtail the widespread abuse by petroleum franchisors of their ability to terminate franchises." *Karbowski*, 879 F.2d at 1055. This goal is balanced against the "legitimate needs of a franchisor to be able to terminate a franchise … based upon certain acts of the franchisee." *Id.* (quoting Senate Report at 877). The result of this balancing is that petroleum companies may properly terminate franchises only for certain enumerated reasons. *Id.;* 15 U.S.C. § 2802(a). Also, even if there is a valid ground for termination, such action may be taken only when the notification requirements of the PMPA are met. 15 U.S.C. §§ 2802(b)(1)(A) and 2804.

## C. *The Flatlands Avenue Station*

Defendant claims that its termination of the franchise agreement covering the Flatlands Avenue station is justified on four statutory grounds: (i) a "failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship" (15 U.S.C. § 2802(b)(2)(A)); (ii) a "failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise" (15 U.S.C. § 2802(b)(2)(B)); (iii) a "failure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled" (15 U.S.C. § 2802(b)(2)(C) and (c)(8)); and (iv) a "failure by the franchisee to operate the marketing premises for 7 consecutive days." 15 U.S.C. § 2802(b)(2)(C) and (c)(9)(A). Defendant's first and third con-

tentions, which are both based on plaintiff's failure to pay amounts due for rent, gasoline and other products, provide adequate justification for Sun's termination of the Flatlands franchise.

Defendant's first ground, a failure to comply with a material provision of the franchise agreement, requires a determination of the reasonableness of the agreement's provisions. The Second Circuit has provided that an objective standard governs that determination, *i.e.*, that the allegedly violated provision must be objectively reasonable, "taking into consideration all the relevant facts and circumstances." *Darling v. Mobil Oil Corp.*, 864 F.2d 981, 991 (2d Cir.1989).

The parties do not dispute that the payment obligations at issue here are a reasonable and material part of the franchise agreement. Although plaintiff's explanation for his lack of funds is sympathetic, it does not negate his undisputed failure to comply with a material provision of the franchise agreement. Therefore, defendant has demonstrated that it had statutory grounds, pursuant to section 2802(b)(2)(A), to terminate plaintiff's franchise.

Similarly, plaintiff's failure to pay for rent, gasoline and other products justified the termination of the Flatlands Avenue franchise on the third statutory ground advanced by defendant—the failure of the franchisee, in a timely manner, to pay all sums to which the franchisor was legally entitled. 15 U.S.C. § 2802(c)(8). Although some courts "scrutinize the reasonableness of terminations even when an event enumerated in § 2802(c) has occurred," *Marathon Petroleum Co. v. Pendleton*, 889 F.2d 1509, 1512 (6th Cir.1989); *Sun Refining and Marketing Co. v. Rago*, 741 F.2d 670, 673 (3d Cir.1984), the Second Circuit has rejected that approach. *Russo v. Texaco, Inc.*, 808 F.2d 221, 225 (2d Cir.1986) (finding that Section 2802(c) provides grounds for termination that are "conclusively presumed to be reasonable as a matter of law"). My inquiry is thus restricted to determining whether plaintiff paid all sums due to defendant in a timely manner. It is undisputed that he did not.

Plaintiff asserts that the termination was unjustified because (i) the amount of money that he owed to Sun was unclear; and (ii) Sun was not "legally entitled" to any funds. These arguments have no merit. Although the exact amount of money that plaintiff owed to defendant is unclear, it is somewhere between $29,000 (plaintiff's estimate at oral argument) and $67,000 (defendant's highest estimate). The dispute over the amount does not alter the undisputed fact that plaintiff was in serious arrears. The contention that Sun was not "legally entitled" to any funds is frivolous, and it is irreconcilable with plaintiff's admission that he owes Sun at least $29,000.

■ Defendant's other purported justifications for its termination of the Flatlands Avenue franchise are insufficient. Although it argues that there was a "failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise," *see* 15 U.S.C. § 2802(b)(2)(B), Sun has made no such showing. To the contrary, viewed in the light most favorable to plaintiff, the evidence demonstrates that plaintiff consistently made all payments to defendant except when extraordinary circumstances prevented him from doing so. Even then, plaintiff offered to pay down his arrears and to pay cash for future gas sales, which offer was refused by Sun. Moreover, even if there were evidence that plaintiff failed to make such good faith efforts, defendant still failed to give plaintiff notice and an opportunity to cure, which are required conditions of termination on this ground. 15 U.S.C. § 2802(b)(2)(B); *see Crown Central Petroleum Corp. v. Waldman*, 515 F.Supp. 477, 482 (M.D.Pa.1981), *aff'd*, 676 F.2d 684 (3d Cir.1982).

■ Defendant's final argument in support of its termination rests on plaintiff's failure to supply petroleum products for a period of seven consecutive days. However, according to plaintiff, the only reason that he did not sell gasoline for those seven days is because defendant refused to supply any, even though plaintiff offered to pay down his arrears and to pay cash for gasoline purchases. Thus, plaintiff never willfully re-

fused to sell Sun's gasoline to its customers. Defendant's response that it did not sell gasoline to plaintiff because he was in arrears makes clear that its real complaint is plaintiff's failure to make payments due to Sun, not his failure to sell Sun gasoline.[1]

### 1. *The Notification Requirement*

■ A valid termination under the PMPA must comply with the notice requirements in section 2804. 15 U.S.C. § 2802(b)(1)(A). Since the notices of termination that defendant provided to Zipper on July 27, 1995, and August 1, 1995, do not satisfy the requirements of the Act, defendant's termination of plaintiff's Flatlands Avenue franchise was in contravention of the PMPA.

Section 2804 of the PMPA provides, in pertinent part:

(a) Prior to termination of any franchise ... the franchisor shall furnish notification of such termination ... to the franchisee who is a party to such franchise or such franchise relationship ...

(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination takes effect.

The 90–day notice requirement does not apply if it would not be "reasonable for the franchisor to furnish [such] notification." 15 U.S.C. § 2804(b)(1). The franchisor is still required, however, to give notice "on the earliest date" that is "reasonably practicable." 15 U.S.C. § 2804(b)(1)(A).

The Second Circuit has cautioned that "the 90–days notice ordinarily required by the PMPA should not be lightly excused." *Wisser Co., Inc. v. Mobil Oil Corp.*, 730 F.2d 54, 60 (2d Cir.1984). *Wisser* upheld the immediate termination of a franchise agreement where the franchisee was misbranding gasoline. *Id.* Because the franchisee was "committing a serious violation of Mobil's contract and property rights and it was perpetrating a fraud on the public," a forthwith termination was justified. *Id.*

There are no similarly compelling facts here. Plaintiff owed defendant some disputed amount of money. The parties agree,

---

1. Counsel for defendant conceded as much at   oral argument.

however, that plaintiff made an offer to pay off that debt and to pay in advance for future gasoline sales, which offer was refused by defendant. Defendant's own affidavits indicate that: (i) plaintiff offered to pay a 2 cent premium on all of his gasoline purchases until his debt was paid off; (ii) defendant wanted plaintiff to pay a 5 cent premium on gasoline purchases; and (iii) defendant refused plaintiff's offer of payment and terminated the franchise. Neither party submits that plaintiff was unable to pay for future gas purchases. Therefore, defendant had no realistic fear that, if the franchise were not immediately terminated, substantial additional deficiencies would result. Under such circumstances, it would not have been unreasonable for the franchisor to give the full 90 days notice, or at least some notice which was not "effective immediately."

The cases cited by defendant do not support its position. In fact, none of those courts upheld an immediate termination on the ground that the franchisee owed money to the franchisor. Rather, the cases show that where a franchisor would suffer large additional deficiencies if it provided 90 days notice to a franchisee, it is reasonable to provide less than 90 days notice. *See Marathon Petroleum Co. v. Pendleton*, 889 F.2d 1509, 1513 (6th Cir.1989) (10 days notice was adequate where the franchisee (i) had a "declining interest in operating the station," (ii) failed to "maintain adequate gas supplies," and (iii) was "chronically late" in his payments to the franchisor); *Murphy Oil USA, Inc. v. Brooks Hauser*, 820 F.Supp. 437, 443 (D.Minn.1993) (14 days notice of termination was justified in order to prevent further losses to the franchisor when franchisee was plummeting further and further into arrears); *see also Escobar v. Mobil Oil Corp.*, 522 F.Supp. 593 (D.Conn.1981), *rev'd on other grounds*, 678 F.2d 398 (2d Cir.1982) (holding that the provision of 48 hours notice of termination for the non-payment of rent was inadequate).

As those cases demonstrate, the 90–day notice requirement is not an "all or nothing" requirement that permits no notice at all when 90 days would be unreasonable. Rath-

er, notice is still required "on the earliest date" that is "reasonably practicable." 15 U.S.C. § 2804(b)(1)(A). Therefore, even if something less than 90 days notice would have been reasonable under the circumstances of this case, I conclude that an immediate notice of termination was not. Moreover, the cases cited by defendant all are premised on the franchisor's legitimate fear that the franchisee would plunge further and further into arrears if franchise operations continued. Here, given plaintiff's offers to pay in advance for gasoline purchases, defendant had no such fears.

As the Second Circuit noted in *Wisser*, 730 F.2d at 59, Congress meant to give franchisees the right to cure some kinds of conduct that warrant termination, but not others. The failure to timely pay amounts due to the franchisor falls in the latter category. Defendant suggests that it is futile to require that plaintiff receive advance notice of termination when he has no right to fend off the termination by curing his offending conduct. However, the PMPA plainly establishes otherwise, *see id.* (after concluding that franchisee had no right to cure its misbranding, the court turns to the separate question whether the "forthwith" termination was adequate), and by doing so, it imposes on the franchisor incentives to preserve the existing relationship. The notice period itself, together with the prohibition on the establishment of new franchise relationships for at least 30 days subsequent to the issuance of a notice of termination, *see* 15 U.S.C. § 2804(b)(1)(B), impedes terminations in a way that may cause the franchisor to accept a cure even though it is not required to, and in any event blunts the economic impact of termination on the "Davids" of the industry.

In sum, construing the notice provisions in the manner requested by defendant would read the 90–day notice requirement out of the statute. *See Hanes v. Mid–America Petroleum, Inc.*, 577 F.Supp. 637, 647 (1983). Accordingly, I reject its argument and conclude that the immediate notice of termination given to Zipper was not reasonable under the circumstances of this case.[2] Sun's

---

**2.** The attempt to terminate the Flatlands Avenue

franchise occurred more than a year ago, in July

motion for a declaration that the termination was valid is denied.[3]

### D. *The Remsen Avenue Station*

Defendant argues that plaintiff's claims with respect to the Remsen Avenue station are without merit because the parties executed an agreement that released each other of all obligations under the franchise agreement. Plaintiff counters that the release was the product of fraud and economic duress and therefore should not be enforced as written. I grant defendant's motion for partial summary judgment on this ground, since I find that there is no genuine issue of material fact as to plaintiff's claims of fraud and duress.

There is no dispute between the parties as to the terms of the executed release, or as to the fundamental principle that a release can be set aside on the grounds of fraud or duress. *See Skylon Corp. v. Guilford Mills, Inc.,* 864 F.Supp. 353, 358 (S.D.N.Y.1994); *Mangini v. McClurg,* 24 N.Y.2d 556, 563, 301 N.Y.S.2d 508, 249 N.E.2d 386 (1969). The parties differ, however, on whether plaintiff has a viable claim for either fraud or duress.

#### 1. *The Fraud Claim*

"In raising a claim of fraudulent inducement of contract, a party must argue that its knowing assent to the terms of the contract followed from a false promise by the other side." *Kyung In Lee v. Pacific Bullion (New York) Inc.,* 788 F.Supp. 155, 157 (E.D.N.Y.1992). Under New York law, a well-pleaded claim of fraud in the inducement of a contract relied upon by the defendant states a sufficient issue for trial. *Centronics Financial Corp. v. El Conquistador,* 573 F.2d 779, 782 (2d Cir.1978) (citing *Sabo v. Delman,* 3 N.Y.2d 155, 159, 164 N.Y.S.2d 714, 716, 143 N.E.2d 906, 907 (1957)). To establish fraud, one party must have (i) misrepresented a material fact; (ii) known that fact to

be false; (iii) intended to induce reliance on the misrepresentation; and (iv) in fact induced reliance. *Skylon Corp. v. Guilford Mills, Inc.,* 864 F.Supp. 353, 358 (S.D.N.Y. 1994).

Plaintiff has no claim of fraud, as he has not alleged in his affidavit or in his Complaint that he signed the release in reliance on any misrepresentations made by Sun. Plaintiff alleges that defendant (i) induced him to sign the Remsen Avenue station agreement by promising to charge him less rent than the agreement provided, and then (ii) reneged on its promise and told plaintiff that it would not grant him any rent reductions. The financial difficulties this created for plaintiff caused him to give up the Remsen Avenue station by executing the release in July 1993. Defendant then proceeded to give a lower rent to another franchisee. Plaintiff asserts that all along, Sun was manipulating events to orchestrate plaintiff's relinquishment of the Remsen Avenue station.

Defendant's initial promise to lower plaintiff's rent, even if knowingly false, does not provide a factual basis to set aside the release, since the release was not executed by the plaintiff in reliance on that statement. So too, defendant's subsequent refusal to lower plaintiff's rent, although relied on by plaintiff when he executed the release, does not provide a factual basis for a claim of fraud in the inducement, since it was not a knowing misstatement by Sun. It was not inaccurate for Sun to tell Zipper that it would not offer *him* a lower rent, even if Sun might offer a reduced rent to a different franchisee. Indeed, plaintiff's own theory of the case— that Sun was seeking his ouster from the Remsen Avenue station—makes it clear that Sun's representation that it would not offer plaintiff a lower rent was, in fact, true. In any event, there are no facts before me that suggest that it was false.

---

1995, and the station has remained dormant for the past 15 months. Interestingly, Sun could have avoided the outcome here if, after plaintiff filed this action in August 1995, Sun filed a second notice of termination with 90 days notice, to be effective if the original notice was held insufficient. *See Escobar,* 678 F.2d at 399.

**3.** Plaintiff also opposes defendant's motion for partial summary judgment on the ground that he lacks important discovery materials. Plaintiff, however, cannot point to any discovery that he is lacking that might enable him to present facts essential to justify his opposition to the motion. Fed.R.Civ.P. 56(f).

At bottom, plaintiff's complaint is that it was unfair for Sun to fail to give him a rent reduction, to thereby obtain the release, and then to lease the station to another franchisee at a lower rent. Fair or not, those events cannot constitute fraud in the inducement of the release.

### 2. *The Economic Duress Claim*

New York law establishes the following elements of economic duress: (1) a threat; (2) which was unlawfully made; (3) which caused involuntary acceptance of contract terms; and (4) where the circumstances permitted no other alternative to accepting the imposed terms. *Kamerman v. Steinberg*, 891 F.2d 424, 431 (2d Cir.1989).[4]

New York courts apply rigid standards to economic duress claims. The party seeking to avoid an otherwise valid release on duress grounds cannot simply claim that the other party threatened to breach their agreement. *See Orix Credit Alliance, Inc. v. Hanover*, 182 A.D.2d 419, 582 N.Y.S.2d 153, 154 (1st Dep't 1992) ("A mere threat by one party to a contract to breach it by not delivering required items, indeed, financial or business pressure of all kinds, even if exerted in the context of unequal bargaining power, does not constitute economic duress").

A party raising a duress claim must also do more than merely assert that the executed contract was signed due to his or her poor financial condition. *See Kenneth D. Laub & Co. v. Domansky*, 172 A.D.2d 289, 568 N.Y.S.2d 601, 602 (1st Dep't 1991) ("[t]hat plaintiff knew defendant was in financial straits when demanding commission(s) amounts to no more than mere hard bargaining tactics"). Rather, in order to prevail on a duress claim, the plaintiff must show that the defendant's actions deprived him of his free will, and that "the ordinary remedy of an action for a breach of contract would not be adequate." *Austin Instrument, Inc. v. Loral Corp.*, 29 N.Y.2d 124, 130–131,

324 N.Y.S.2d 22, 25–26, 272 N.E.2d 533, 535 (1971).

Plaintiff does not meet these exacting standards. He simply asserts that defendant's taking advantage of his financial situation amounted to economic duress. Under New York law, plaintiff's claim is insufficient. *Kenneth D. Laub & Co. v. Domansky*, 172 A.D.2d 289, 568 N.Y.S.2d 601, 602 (1st Dep't 1991).

## CONCLUSION

For the reasons stated above,

(a) defendant's motion for a declaration that it was entitled to terminate the Flatlands Avenue franchise agreement is denied;

(b) defendant's motion to immediately recover possession of the Flatlands station premises is denied; and

(c) defendant's motion for summary judgment on plaintiff's causes of action based on the Remsen franchise agreement is granted.

So Ordered.

---

**4.** Defendant proposes the use of federal common law standards to govern plaintiff's economic duress claim. It is well-settled, however, that federal common law only governs releases of "federal statutory causes of action." *Locafrance U.S.*

*Corp. v. Intermodal Systems Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir.1977). In the case at bar, state law applies, since the release in question was of two state causes of action (fraud and breach of contract).