**Mark DEDVUKAJ and Dedvukaj, Inc., Plaintiffs,**

**v.**

**EQUILON ENTERPRISES, L.L.C., Defendant.**

**No. 02–CV–74346.**

United States District Court, E.D. Michigan, Southern Division.

Jan. 27, 2004.

Jamal J. Hamood, Michael J. Fergestrom, Hamood & Fergestrom, Troy, MI, for Plaintiffs.

Daniel G. Wyllie, Thomas M. Schehr, Dykema Gossett PLLC, Detroit, MI, for Defendant.

*OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO STRIKE THE AFFIDAVIT OF NIKOLA DEDVUKAJ AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

STEEH, District Judge.

### INTRODUCTION

This case, stemming from defendant Equilon, Inc.'s termination of a Shell service station retailer's franchise, is currently before the court on defendant's motion for summary judgment. Defendant seeks judgment in its favor on each of plaintiff's claims stated in the complaint, which allege violation of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq. ("PMPA"), breach of contract, fraud, promissory estoppel, and unjust enrichment, conversion, statutory conversion, and replevin. Judgment will enter for defendant as to plaintiff's Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq. ("PMPA") count, because the court agrees with defendant that immediate notice of termination was reasonable pursuant to the PMPA. Plaintiff's remaining claims will also be dismissed, for the reasons stated below.

### BACKGROUND

Plaintiff Dedvukaj, Inc. ("Dedvukaj") took over an existing Shell fuel station on Hall Road in Utica, Michigan in July 1998, when it was assigned a prior franchisee's interest in a Shell Dealer Agreement and Shell Motor Fuel Station Lease, with terms running from September 1, 1997 until August 31, 2002. During the term of those agreements (on July 1, 1998), Shell Oil Company assigned its rights to defendant, Equilon Enterprises, L.L.C. ("Equilon"). Upon expiration of the initial agreements, Dedvukaj entered into a new Retail Sales Agreement and Retail Facility Lease with Equilon effective as of August 1, 2000 until November 2, 2001 when it received notice of Equilon's immediate termination of its lease and dealer agreement under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq. ("PMPA"). The notice of termination relied upon Dedvukaj's failure to operate the station for the sale of gasoline for the month of October 2001, delinquency of payments, and failure to have the required grades and types of Shell petroleum products for sale.

Plaintiffs Mark Dedvukaj (president and 50% shareholder of Dedvukaj, Inc.) and Dedvukaj, Inc. generally assert that their financial problems were unjustly caused by the defendant, which at the inception of their franchise allegedly promised the indefinite continuation of Shell's Variable Rent Program ("VRP"), which gave plaintiff rebates on rent owed under the lease, which were calculated on a monthly basis on the number of gallons of fuel sold by the franchise. Evidence of such representations made prior to entering into the franchise agreements is contained solely in affidavits of Nikola Dedvukaj[1] and Frank Dedvukaj, Nikola's brother, who was not an officer or shareholder of plaintiff, but asserts awareness of such representations

---

1. Defendant moves to strike the affidavit of Nikola Dedvukaj, who is currently living in Serbia and was not produced by plaintiffs for deposition. The court's discussion of and determination on this motion is set forth below.

made by defendant. Plaintiffs assert that their demise was caused by both the termination of the VRP in 2000 and the "onerous" terms of the Equilon lease, allegedly presented in August 2000 on a "take it or leave it" basis.

Plaintiffs' complaint, filed November 1, 2002, alleges that termination of the franchise violated the PMPA, and asserts state law claims of breach of contract, fraud, and promissory estoppel as well as unjust enrichment, conversion, statutory conversion, and replevin. In April 2003, the court granted in part and denied in part defendant's earlier filed motion to dismiss. Defendant now moves for summary judgment as to all remaining claims in the complaint.

### STANDARD

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See FDIC v. Alexander,* 78 F.3d 1103, 1106 (6th Cir.1996). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Kutrom Corp. v. City of Center Line,* 979 F.2d 1171, 1174 (6th Cir.1992).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Winningham v. North Am. Resources Corp.,* 42 F.3d 981, 984 (6th Cir. 1994) (citing *Booker v. Brown & William-*

*son Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all inferences therefrom must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Enertech Elec., Inc. v. Mahoning County Comm'rs,* 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Co., Inc.,* 952 F.2d 942, 945 (6th Cir.1992). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Hartleip v. McNeilab, Inc.,* 83 F.3d 767, 774 (6th Cir.1996).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir.1995). Mere allegations or denials in the nonmovant's pleadings will not meet this burden. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Further, the nonmoving party cannot rest on its pleadings to avoid summary judgment. It must support its claim with some probative evidence. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

### ANALYSIS

*Motion to Strike Affidavit of Nikola Dedvukal*

 The court will first address defendant's argument that it should not consider

the testimony of Nikola Dedvukaj. Plaintiff offers his affidavit testimony in response to defendant's motion for summary judgment, despite Nikola Dedvukaj's failure to appear at a deposition scheduled by defendant during discovery.[2] Defendant asserts that Fed.R.Civ.P. 37(d), which allows the court to make "orders in regard to the failure as are just" concerning the testimony of any "party or an officer, director, or managing agent of a party" who fails to appear for deposition, supports striking the recent affidavit testimony of Nikola Dedvukaj, an officer of party Dedvukaj, Inc. Plaintiff responds that the corporation, now defunct, had no way to require Nikola Dedvukaj's attendance at a deposition and that plaintiffs had no knowledge of Nikola's whereabouts or any way to find him prior to defendant's motion. Despite plaintiffs' enthusiastic response to defendant's motion to strike, it is unreasonable to rely on affidavit "evidence" from an individual who has made himself unavailable for discovery and for whom there is even no indication he will be available for trial. Moreover, defendant was entitled to receive such evidence, and digest it, during the discovery period prior to filing this summary judgment motion. Defendant's motion to strike will be granted pursuant to Fed.R.Civ.P. 37(d).[3]

*PMPA Claim*

■ Plaintiffs' PMPA claim, as amended following the court's order granting in part defendant's motion to dismiss, asserts defendant's improper termination of plaintiffs' Shell franchise. Defendant argues for summary judgment of this claim, argu-

ing that termination was based upon one of the grounds explicitly contained in 15 U.S.C. § 2802(b)(2)(C), failure to operate the station for the sale of motor fuel for seven consecutive days. Defendant also asserts that the termination was permitted by the terms of the lease and dealer agreement, which included provisions listing allowable grounds for termination under the PMPA. Defendant further states that it complied with the notice requirements of the PMPA, which requires 90 days' notice of termination unless circumstances make it unreasonable for the franchisor to furnish such notification, and argues that such circumstances were present here.

Defendant cites to numerous cases applicable to the question of the reasonableness of the termination. One is *Marathon Petroleum Co. v. Pendleton,* 889 F.2d 1509, 1512–13 (6th Cir.1989), in which the 6th Circuit approved 10 days' notice due to the franchisee's declining interest in operating its station and a failure to maintain adequate gasoline supplies. Defendant asserts that even immediate termination is permitted under 15 U.S.C. § 2804(b)(1), such as in the case of *Wisser Co., Inc. v. Mobil Oil Corp.,* 730 F.2d 54, 60 (2d Cir. 1984), where the court approved an immediate termination where the franchisee was misbranding gasoline. In reply, defendant also relies on the reasoning in a recent, unpublished 6th Circuit case, *Equilon Enterprises L.L.C. v. Rahim, Inc.,* 80 Fed. Appx. 463, 2003 WL 22598325 (6th Cir. 2003), in which the Court of Appeals affirmed the district court's entry of summary judgment for Equilon in a case in-

---

**2.** Defendant also objects to the form of Nikola Dedvukaj's deposition, apparently sworn to in Serbia but for which no translation was provided to defendant or the court.

**3.** Although the court will grant defendant's motion to strike, it notes that the determination of this motion does not depend on such a

ruling. As set forth below, concerning plaintiff's claims of breach of contract, fraud, and promissory estoppel, the court's determination relies primarily on the inclusion of integration clauses in the pertinent agreements and is only bolstered by the lack of probative evidence concerning earlier representations about a permanent rebate program.

volving issues very similar to those in the instant matter.

There appears to be no dispute that the plaintiffs failed "to operate the marketing premises... for 7 consecutive days," 15 U.S.C. §§ 2802(c)(8), and that plaintiffs were past due in making payments to defendant. Plaintiff asserts that, even so, the franchisor's good faith or lack thereof, and whether the termination decision was made in the normal course of business, has to be tested by the court to preclude "sham determinations from being used as an artifice for termination or nonrenewal," citing *Beck Oil Co., Inc. v. Texaco Refining & Marketing, Inc.*, 25 F.3d 559, 562 (7th Cir.1994). Plaintiffs' argument is that they have presented evidence that their problems were caused by the actions of the franchisor, i.e. rescission of the VRP, and new and "onerous" lease terms, and that therefore termination by the very party causing the problems could not have been exercised in good faith.

Despite plaintiffs' arguments, this court finds that termination under the PMPA was reasonable. The case of *Rahim*, although unpublished, is especially persuasive in light of this case's identical PMPA issue. As in the *Rahim* case, two grounds justifying termination under the statute are present in this case: " 'failure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled;' and 'failure by the franchisee to operate the marketing premises ... for 7 consecutive days.' " *Rahim*, 80 Fed.Appx. at 467, 2003 WL 22598325 at *3, citing 15 U.S.C. §§ 2802(c)(8), (9)(A). Regarding defendant's termination of the VRP program and plaintiff's contention that the defendant unreasonably included more onerous terms in plaintiff's second lease agreement, the court finds neither constitutes evidence of bad faith or unreasonableness. In response to defendant's motion, plaintiff

has not offered evidence that either the new lease terms or the termination of the incentive program, or any other action taken by defendant, was outside of the normal course of business for a franchisor-franchisee relationship, or taken in bad faith.

 The more difficult question is that of whether dispensing with notice as provided by the PMPA was reasonable under the circumstances. Although 15 U.S.C. § 2804(a)(2) requires a 90 day notice prior to termination, § 2804(b)(1) provides an exception where it would be unreasonable to require 90 days notice of termination be given by the franchisor. If this exception applies, the franchisor is required to give notice "on the earliest date on which furnishing of such notification is reasonably practicable." 15 U.S.C. § 2804(b)(1)(A). The court notes the case of *Zipper v. Sun Company*, Inc., 947 F.Supp. 62, 69 (E.D.N.Y.1996), in which Eastern District of New York found that immediate notice was not reasonable, where the franchisee had offered to pay in advance for gasoline purchases. That fact is not present here. The *Zipper* court considered numerous other cases interpreting this provision, only one in which an abbreviated notice was found to be inadequate. In that case, *Escobar v. Mobil Oil Corp.*, 522 F.Supp. 593 (D.Conn.1981), a district court did issue a preliminary injunction enjoining the franchisor from terminating the franchise where 48 hours notice of termination was given to the franchisee for non-payment of rent. However, in the much more recent—albeit unpublished—*Rahim* case, the Sixth Circuit decided the issue squarely before this court:

> [g]iven Rahim's untenable claim that it was entitled to a rent discount in perpetuity, and the loss that Equilon had suffered and was likely to face if it continued to provide gasoline to Rahim, no reasonable trier of fact could find that

the minimal notice was inappropriate under the circumstances.

*Rahim*, 80 Fed.Appx. at 468, 2003 WL 22598325 *4. Given the similarity between the cases, this court finds the *Rahim* holding instructive and its reasoning persuasive. Summary judgment will enter for defendant on this claim.

*Breach of Contract Claim*

■ Plaintiffs' second count is for breach of contract, in which plaintiffs assert that defendant's alleged promise of a permanent incentive rebate program was contractual[4], and that defendants therefore breached the contract by terminating the VRP. Defendant contends that the only evidence of representations concerning the VRP comes from the deposition of Mark Dedvukaj, who testified that he first heard about the VRP at a July 15, 1998 meeting at which Shell representative Pamela Washington was present and at which Mark Dedvukaj agreed in writing to the assignment of the prior franchisee's lease, dealer agreement, and related agreements. The parties do not appear to dispute that among the documents exchanged that day was a July 12, 1997 "Offer of Variable Rent Program," which stated that Shell could terminate the program at its option upon 30 days' notice.

Plaintiffs' response emphasizes the affidavit of Nikola Dedvukaj, addressed in the court's ruling, above, and that of Frank Dedvukaj, Nikola's brother, who attests that he "understood from his brother" that the rebate program was permanent, and

that "at some point" he spoke to Shell representatives about the permanency of the per-gallon rebate program. (Affidavit of Frank Dedvukaj, ¶¶ 4, 5) Plaintiffs also point out that the VRP letter, included with the documents assigned by Shell to Dedvukaj on July 15, 1998, was not signed by Dedvukaj and that its mere inclusion in a stack of documents does not reflect its acceptance by plaintiffs.

■ Although the court agrees with plaintiff that the mere inclusion of the VRP letter along with other documents on July 15, 1998 does not impact the plaintiffs' claim, defendant's arguments concerning the lease and dealer agreements' integration documents (found at ¶ 26 of defendant's Exhibit 18 and ¶ 18 of defendant's Exhibit 19), combined with plaintiffs' lack of admissible evidence of any such representation made prior to July 15, 1998, persuades the court that defendant should prevail on this count.[5] As stated in the *Rahim* case, concerning the identical question of law, the prevailing law in Michigan concerning integration clauses is that "a contract with a merger clause nullifies all antecedent claims[,] [including] any collateral agreements that were allegedly an inducement for entering into the contract." *Rahim*, 80 Fed.Appx. at 469, 2003 WL 22598325, *5 (quoting *UAW–GM Human Resource Center v. KSL Recreation Corp.*, 228 Mich.App. 486, 579 N.W.2d 411 (Mich. App.1998)). Plaintiff's breach of contract claim will be dismissed.

---

4. The court notes the absence of argument on the part of defendant that only representatives of Shell are alleged to have made such promises, rather than Equilon representatives, and the lack of any allegations that such promises would have survived an assignment of the agreements by Shell to Equilon (much less the termination of the contracts with Shell). Given the court's disposition of the motion, however, it need not address this issue.

5. The court also notes there is no indication that plaintiffs, who allegedly made the deal in reliance on the VRP, were surprised or worried as of the assignment of the dealer documents in July 1998, when they undisputably received a copy of the VRP letter and signed agreements containing the integration clauses.

*Fraud and Promissory Estoppel Claims*

■ Defendant cites to the case of *Cook v. Little Caesar Enterprises, Inc.*, 210 F.3d 653, 658 (6th Cir.2000) for the proposition that acceptance of the assigned documents on July 15, 1998 (i.e. the lease and dealer agreements), making no reference to a VRP program but in fact including integration clauses, precludes plaintiffs' reliance on the alleged representations concerning a permanent rebate program. The court agrees that the assigned agreements entered into by plaintiffs on July 15, 1998 therefore doom all of plaintiffs' claims contained in Count 3, entitled "Fraud and Misrepresentation," and count 4, entitled "Promissory Estoppel."

■ Reliance by the plaintiffs is required to establish either the plaintiffs' fraud or promissory estoppel claims. It is made clear in the *Cook* case that, "[r]eliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement." *Id.*, citing *3 P.M., Inc. v. Basic Four Corp.*, 591 F.Supp. 1350, 1366 (E.D.Mich.1984). Although fraud, in some instances, "makes a contract voidable at the instance of the innocent party," 3 Corbin, Contracts, § 580, p. 431, "in the context of an integration clause, which releases all antecedent claims, only certain types of fraud would vitiate the contract." *UAW–GM Human Resource Center*, 228 Mich.App. 486, 503, 579 N.W.2d 411. It is further explained that "when a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause." *Id.* See also *Smoracy, L.L.C. v. Cook*, 2002 WL 2031385 (E.D.Mich.2002). In the instant case, as there are no allegations nor evidence that there was fraud of this nature, these claims will be dismissed.

Moreover, as the court has set forth above, the only probative evidence the court can take into consideration which concerns representations about a permanent rebate program is that of Mark Dedvukaj, which is that the representations were first made on the date the assigned documents were accepted by plaintiffs. These facts also bar the claims attempted by plaintiffs in Counts 3 and 4.

*Unjust Enrichment, Conversion, Statutory Conversion and Replevin Counts*

Plaintiff makes claims of unjust enrichment, conversion, statutory conversion and replevin in connection with personal property, including records and equipment, left at the service station and affiliated store. In defendant's motion, it is argued that these items became the property of Equilon pursuant to the lease upon termination of the franchisee-franchisor relationship, and moreover that plaintiff had the opportunity to remove such items from the premises, yet made no effort to do so, and thus abandoned the personal property. In response, plaintiff asserts that the personal property did not become the property of defendant under the terms of the lease, as such property did not constitute "alterations," pursuant to paragraph 9 of the lease, and that because the relationship was improperly terminated, the retention of the personal property was improper.

As set forth above, the court has found that termination was effected in accordance with the PMPA. Furthermore, in concert with defendant's abandonment argument, plaintiff does not assert that it made any effort to collect personal property from the station and/or store, or that it was prohibited from doing so. Finally, the court notes that under lease paragraph 20 (ignored by the plaintiff in its response), "Rights and Duties Upon Termination or Nonrenewal," the lessor had the right to sell any such property and apply proceeds

of such sale to the lessee's indebtedness, or purchase such personal property "on such reasonable terms as Lessor may desire." Summary judgment will enter for defendant as to this claim as well.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is hereby GRANTED as to all of plaintiffs' claims, and plaintiffs' complaint will be dismissed in its entirety.

IT IS SO ORDERED.

## JUDGMENT

The above entitled matter has come before the court on the defendant's motion for summary judgment, and in accordance with the court's order granting defendant's motion entered on JAN 27 2004,

IT IS ORDERED AND ADJUDGED that judgment is hereby GRANTED in favor of defendant.